**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2025

(Submitted: September 3, 2025     Decided: August 6, 2026)

No. 24-2718
——————————————————

DANNY FARRINGTON,

*Plaintiff-Appellee,*

-v.-

SGT. MICHAEL POOLE, C.O. HEATH FURBECK, C.O. JOSEPH HALEY, C.O. ANDREW COHEN, C.O. PADRAIC LYMAN, C.O. ERIK GETTINGS, C.O. VINCENT LIVRERI, C.O. DAVID DOLLARD,

*Defendants-Appellants.*

——————————————————

Before:     CABRANES, LIVINGSTON, AND MENASHI, *Circuit Judges*.

Defendants-Appellants, officers at Albany County Correctional Facility ("ACCF"), appeal from an order of the United States District Court for the Northern District of New York (Nardacci, *J.*) granting in part and denying in part their motion for summary judgment on excessive force claims brought by Plaintiff-Appellee Danny Farrington ("Farrington"), an individual formerly incarcerated at ACCF.  Defendants-Appellants argue that the district court applied the wrong constitutional standard to Farrington's claims.  Reviewing the district court's

denial of qualified immunity on summary judgment, we agree. Reserving the question of the appropriate standard for excessive force claims brought by individuals detained based solely on alleged parole violations, we conclude the Eighth Amendment, not the Fourteenth Amendment, governs claims brought by individuals like Farrington, who have received a final adjudication and had parole formally revoked. Accordingly, we **VACATE** the district court's order and **REMAND**.

Judge Menashi concurs in the judgment of the court in a separate opinion.

FOR PLAINTIFF-APPELLEE:  EDWARD SIVIN, SIVIN, MILLER & ROCHE, LLP, NEW YORK, NY.


FOR DEFENDANTS-APPELLANTS:  STEPHEN J. REHFUSS, THE REHFUSS LAW FIRM, P.C., LATHAM, NY.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

In this case, we consider the appropriate legal standard for the excessive force claims brought by Plaintiff-Appellee Danny Farrington ("Farrington") against officers at Albany County Correctional Facility ("ACCF"). The Supreme Court has held that the Eighth Amendment standard applies to the claims of convicted prisoners while the Fourteenth Amendment governs the claims of pretrial detainees. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). Neither

2

the Supreme Court nor this Court has determined the appropriate standard for claims brought by an individual detained following an alleged parole violation.

The district court held that the Fourteenth Amendment applied to Farrington's claims because it could not determine whether he had received an adjudication of his alleged parole violations prior to the incident at issue. On interlocutory appeal from the district court's denial of qualified immunity on summary judgment, we conclude the district court erred in applying the Fourteenth Amendment standard in its qualified immunity analysis.

Whatever the appropriate standard for alleged parole violators, the Eighth Amendment governs excessive force claims where the plaintiff received a final adjudication prior to the challenged use of force, and thus became an adjudicated parole violator. Such a plaintiff is materially indistinguishable from any other convicted prisoner. Though the district court concluded it could not determine whether Farrington's parole revocation hearing constituted a final adjudication, the transcript of the hearing, which we take judicial notice of on appeal, unambiguously demonstrates Farrington pled guilty to the violations and had his parole formally revoked. His assertions to the contrary are "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

3

Accordingly, we **VACATE** the district court's order and **REMAND** for the district court to analyze qualified immunity under the Eighth Amendment standard in the first instance.

## BACKGROUND[1]

In March of 2020, Plaintiff-Appellee Danny Farrington ("Farrington") was arrested and detained at Albany County Correctional Facility ("ACCF"), in connection with an alleged parole violation. Farrington participated in a parole violation hearing on April 14, 2020 and remained at ACCF until August of 2020, when he was transferred into the custody of the New York State Department of Corrections and Supervision.

On May 11, 2020, Defendants-Appellants Sergeant Michael Poole, Corrections Officer Heath Furbeck, Corrections Officer Joseph Haley, Corrections Officer Andrew Cohen, Corrections Officer Padraic Lyman, Corrections Officer Erik Gettings, Corrections Officer Vincent Livreri, and Corrections Officer David Dollard (collectively, "Appellants") utilized force or observed the use of force to

---

[1] Unless otherwise noted, the factual background presented here is derived from undisputed facts from the parties' submissions at summary judgment.

subdue Farrington following a physical altercation between Farrington and Sergeant Poole.   Farrington and Appellants dispute the specifics of the incident.

On April 15, 2022, Farrington filed a complaint with the United States District Court for the Northern District of New York (Nardacci, *J.*) alleging, *inter alia*, that during the course of the incident, Appellants either used excessive force or observed the use of excessive force without intervening in violation of the Eighth and Fourteenth Amendments.   Appellants moved for summary judgment.   On September 10, 2024, the district court granted the motion in part and denied the motion in part.

As relevant here, the district court concluded that the Fourteenth Amendment provided the appropriate standard for Farrington's excessive force claims because "it [was] not clear from the record whether Plaintiff's parole violation was ruled upon prior to the incident in question."   *Farrington v. Poole*, No. 9:22-CV-00356 (AMN/CFH), 2024 WL 4135791, at *7 (N.D.N.Y. Sept. 10, 2024). The court thus dismissed Farrington's Eighth Amendment claims "as improper as a matter of law."   *Id.*   With respect to Farrington's Fourteenth Amendment claims, the court held that factual disputes precluded summary judgment.

The court declined also to grant summary judgment based on Appellants' qualified immunity defense.   Judge Nardacci explained that qualified immunity requires a district court to consider "whether '(1) . . . the official violated a statutory or constitutional right, and (2) . . . the right was clearly established at the time of the challenged conduct.'"   *Id.* at *11 (citation modified) (quoting *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020)).   The court determined that "whether Defendants violated Plaintiff's constitutional rights . . . is an issue of fact to be determined by the jury."   *Id.* at *11.   And, though that factual dispute "alone preclude[d] summary judgment on qualified immunity," the court also observed that "there is binding [Fourteenth Amendment] precedent which prohibits 'significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others'" and identified "law that bars officers from using excessive force before allowing a plaintiff the opportunity to comply with an order." *Id.* (quoting *Jones*, 963 F.3d at 225).   This appeal followed.

## DISCUSSION

On appeal, Appellants argue the district court erred in applying the Fourteenth Amendment rather than the Eighth Amendment to Farrington's excessive force claims.   We agree.

6

## I.     Appellate Jurisdiction and Standard of Review

"This appeal comes to us from the denial of a motion for summary judgment, which ordinarily is not an appealable final order."  *Terebesi v. Torreso*, 764 F.3d 217, 228–29 (2d Cir. 2014) (citing 28 U.S.C. § 1291).  Under "the collateral order doctrine, however, we have jurisdiction over interlocutory appeals of orders denying claims of qualified immunity[.]"  *Bolmer v. Oliveira*, 594 F.3d 134, 140 (2d Cir. 2010); *see also id.* ("The principal justification for allowing such appeals is that '[t]he entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)).

Our jurisdiction over such interlocutory appeals is limited.  The "denial of qualified immunity on a summary judgment motion is an appealable final decision only 'to the extent the denial turns on an issue of law.'"  *Terebisi*, 764 F.3d at 229 (quoting *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 277 (2d Cir.1999)).  Accordingly, as a general matter, "where the district court denied immunity on summary judgment because genuine issues of material fact remained, we have jurisdiction to determine whether the issue is *material,* but not

7

whether it is *genuine.*"   *Bolmer*, 594 F.3d at 140–41 (2d Cir. 2010) (emphasis in original); *see also Terebisi*, 764 F.3d at 229 ("Where factual disputes persist, we may exercise appellate jurisdiction only for the limited purpose of deciding whether, on the basis of 'stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find, the immunity defense is established as a matter of law.'" (quoting *Salim v. Proulx*, 93 F.3d 86, 90 (2d Cir.1996)).

In *Scott v. Harris*, however, the Supreme Court reversed the lower court's denial of summary judgment on interlocutory appeal, explaining that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."   550 U.S. 372, 380 (2007); *see also id.* at 380–81 ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him.   The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."). Though *Scott* did not explicitly consider "the limits of the collateral order doctrine in qualified immunity cases," we agree with our sister circuits that have

8

concluded, following *Scott*, that "where the trial court's determination that a fact is subject to reasonable dispute is blatantly and demonstrably false, a court of appeals may say so, even on interlocutory review."  *Blaylock v. City of Philadelphia*, 504 F.3d 405, 414 (3d Cir. 2007); *see also Lewis v. Tripp*, 604 F.3d 1221, 1225–26 (10th Cir. 2010) (noting that "when the 'version of events' the district court holds a reasonable jury could credit 'is blatantly contradicted by the record,' we may assess the case based on our own *de novo* view of which facts a reasonable jury could accept as true" (quoting *Scott*, 550 U.S. at 380); *Witt v. W. Virginia State Police, Troop 2*, 633 F.3d 272, 276–77 (4th Cir. 2011); *Gant v. Hartman*, 924 F.3d 445, 449–50 (7th Cir. 2019); *Bishop v. Hackel*, 636 F.3d 757, 769 (6th Cir. 2011).

Thus, excepting any factual findings that are "blatantly contradicted by the record," *Scott*, 550 U.S. at 380, we have jurisdiction over Defendants' appeal "only to the narrow extent [it] turn[s] on questions of law," *Bolmer*, 594 F.3d at 140. "Cabined by these constraints, our review is *de novo*."  *Id.* at 141.

## II.    Qualified Immunity

"Qualified immunity shields government officials from liability for civil damages if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Matusak*

9

*v. Daminski*, 165 F.4th 702, 711 (2d Cir. 2026) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Reichle v. Howards*, 566 U.S. 658, 664 (2012) ("Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."). Whether Appellants are entitled to qualified immunity with respect to Farrington's excessive force and failure to intervene claims depends in part on what constitutional provision provided Farrington protection against excessive force at the time of the incident.[2] *See Farrington*, 2024 WL 4135791 at *11 (analyzing qualified immunity under the Fourteenth Amendment standard).

The relevant constitutional provisions and applicable legal standards for an excessive force claim differ based on whether the plaintiff is a convicted prisoner or a pretrial detainee.[3] "After conviction, the Eighth Amendment 'serves as the

---

[2] We note that Appellants did not explicitly raise qualified immunity in their opening brief. But as we explain above, Appellants' core argument on appeal, that "the District Court's application of the 14th Amendment in this context was erroneous," Appellants' Br. 21, necessarily places the district court's ruling on qualified immunity in issue.

[3] The appropriate constitutional standard implicates both Farrington's excessive force claims and his failure to intervene claims because a successful failure to intervene claim requires that "an officer observe[] excessive force is being used or has reason to know that it will be." *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *see also Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to intervene,

primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.'"   *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).   And "only the 'unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment forbidden by the Eighth Amendment."   *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

Unlike a convicted prisoner, however, "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."   *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Whitley*, 475 U.S. at 318 ("The Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes,' and consequently the Clause applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'" (quoting *Ingraham v. Wright*, 430 U.S. 651, 664, 671 n.40 (1977)).   Accordingly, to establish an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).

---

it logically follows that there must exist an underlying constitutional violation.").

11

This Court has not "addressed where parolees fall on the continuum" between convicted prisoners and pretrial detainees in the context of excessive force claims. *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020). The district court highlighted that "several district courts in this circuit have determined that where the plaintiff is 'detained for allegedly violating the terms of a sentence imposed in an unspecified federal prosecution' the Fourteenth Amendment applies because such plaintiffs 'resemble[ ] more closely a pretrial detainee than a convicted prisoner.'" *Farrington v. Poole*, No. 9:22-CV-00356 (AMN/CFH), 2024 WL 4135791, at *6 (N.D.N.Y. Sept. 10, 2024) (quoting *Brooks v. Westchester Cty. Jail*, No. 19-CV-10901, 2021 WL 3292229, at *5 (S.D.N.Y. Aug. 2, 2021)). The court applied the Fourteenth Amendment standard to Farrington's claims, explaining "it is not clear from the record whether Plaintiff's parole violation was ruled upon prior to the incident in question." *Id.* at *7 (N.D.N.Y. Sept. 10, 2024). We conclude the district court erred because, whatever the appropriate standard for alleged parole violators, Farrington, who received a final adjudication on his parole violation prior to the May 21, 2020 incident in question, was legally indistinguishable from a convicted prisoner.[4]

---

[4] Our concurring colleague "agree[s] with the majority that the Eighth

Farrington argues that the record is unclear on this point. To be sure, in a May 3, 2020 letter to the Inmate Services Unit of ACCF, Farrington stated that he "had [his] hearing April 14th" but "never got [his] paperwork." App'x 275. And in his deposition, Farrington acknowledged receiving an "actual written decision regarding revocation of parole" only "[a]t some point." App'x 144. But, following this Court's February 27, 2026 order, Appellants filed a copy of Farrington's April 14, 2020 final parole revocation hearing. The transcript makes Farrington's status as an adjudicated parole violator clear beyond doubt.[5]

---

Amendment standard applies to the excessive force claim of an adjudicated parole violator." Concurring Op. at 13. We reiterate that we do not today decide what the appropriate standard would be for the excessive force claim of a merely alleged parole violator. "Because courts are 'essentially passive instruments of government,' we rely on the parties to 'frame the issues for decision' and decide 'only the questions presented.'" *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020)). Appellants argued on appeal that "where there is no material dispute as to the status of the confirmed parole violator, it is the 8th Amendment that should logically apply to an excessive force claim at issue." Appellants' Br. 3. We thus decide the question presented.

[5] We recognize the district court did not have the benefit of the transcript in ruling on Appellants' motion for summary judgment. But because, as we explain below, the transcript is a proper subject of judicial notice, we will not ignore clear and dispositive evidence. We remind all counsel that Rule 11 "imposes on any party who signs a pleading, motion, or other paper . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991).

The hearing was a "final hearing," conducted by an Administrative Law Judge ("ALJ"). Hearing Transcript at 1, Dkt. 35; *see also* N.Y. Exec. L. § 259-i(3)(f)(i) (distinguishing between a "preliminary hearing" and a "final revocation hearing before a hearing officer"). Farrington pled guilty to the violations. *See* Hearing Transcript at 7, Dkt. 35. And, in unambiguous terms, the ALJ stated: "I accept your plea of guilty to Charges 1 and 6 and find by virtue of your plea of guilty that you committed a violation of parole in an important respect. . . . I'm revoking your parole and imposing a hold of 16 months[.]" *Id.*

Under Federal Rule of Evidence 201(b) and 201(d), a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and "may take judicial notice at any stage of the proceeding." *See also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."). We conclude the transcript meets Rule 201(b)(2)'s standard as it is "readily verifiable and, therefore, the proper subject of judicial notice." *Reyn's Pasta Bella, LLC*, 442 F.3d at 746 n.6; *see also Tejas Motel, L.L.C. v. City of Mesquite by & through Bd. of Adjustment*, 63 F.4th 323, 329 n.10 (5th Cir. 2023) ("We

can take judicial notice of state court proceedings even if they are not part of the record on appeal."); *Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*, 84 F.4th 979, 989 n.6 (Fed. Cir. 2023) ("Apple's 2020 Form 10-K is readily verifiable and thus the proper subject of judicial notice.").

"The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972). And "[t]he enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules." *Id.* at 478–79. Having entered a guilty plea and having had his parole formally revoked, Farrington was materially identical to a convicted prisoner at the time of the relevant incident. Accordingly, the Eighth Amendment standard governs Farrington's claims, and the district court should have analyzed qualified immunity under that standard. We vacate and remand for the district court to do so in the first instance.

15

## CONCLUSION

For the foregoing reasons, we **VACATE** the order of the district court and **REMAND** with instructions to analyze Appellants' qualified immunity defense using the Eighth Amendment standard.

MENASHI, *Circuit Judge*, concurring in the judgment:

The district court said that "it is not clear from the record whether [Farrington's] parole violation was ruled upon prior to the incident in question," so the district court applied "the Fourteenth Amendment standard." *Farrington v. Poole*, No. 22-CV-356, 2024 WL 4135791, at *7 (N.D.N.Y. Sept. 10, 2024). In my view, that decision was erroneous for two reasons.

First, it does not matter whether a parolee has been detained based on allegations or an adjudication of parole violations. Either way, the parolee has been detained because of the prior conviction and sentence he received after a criminal trial or guilty plea. As a result, he has the status of a convicted prisoner rather than a pretrial detainee, and the Eighth Amendment applies.

Second, the doctrine of qualified immunity required the district court to apply only clearly established law to the defendants' conduct. It has not been clearly established which standard—the Eighth Amendment or the Fourteenth Amendment—applies to an officer's treatment of a detainee alleged to have violated parole. So the district court should have applied the more permissive constitutional standard as the only standard that has been clearly established. That is the Eighth Amendment standard.

**I**

Under current doctrine, there are two possible constitutional standards by which a court should assess the excessive force claim of a parolee incarcerated for violating parole: the Fourteenth

Amendment and the Eighth Amendment.[1] The claims of pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment, and the claims of post-conviction prisoners against prison officials are analyzed under the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

Under the Fourteenth Amendment, a plaintiff must show "only that the officers' use of … force was *objectively* unreasonable" but need not "show that the officers were *subjectively* aware that their use of force was unreasonable." *Kingsley*, 576 U.S. at 391-92. "Unlike a violation of the Cruel and Unusual Punishments Clause, an official can violate the Due Process Clause of the Fourteenth Amendment without meting out any punishment, which means that the Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." *Darnell*, 849 F.3d at 35.

The Eighth Amendment, by contrast, requires a showing of subjective awareness. The plaintiff's claim of excessive force

---

[1] Justice Alito has suggested that the two standards should be the Fourth Amendment and the Eighth Amendment. *See Kingsley v. Hendrickson*, 576 U.S. 389, 408 (2015) (Alito, J., dissenting) ("Before deciding what a pretrial detainee must show in order to prevail on a due process excessive force claim, we should decide whether a pretrial detainee can bring a *Fourth Amendment claim* based on the use of excessive force by a detention facility employee. If a pretrial detainee can bring such a claim, we need not and should not rely on substantive due process. It is settled that the test for an unreasonable seizure under the Fourth Amendment is objective, so if a pretrial detainee can bring such a claim, it apparently would be indistinguishable from the substantive due process claim that the Court discusses.") (emphasis added) (citations omitted).

"ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (Friendly, J.)). Thus, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

## A

Our court has "not addressed where parolees fall on the continuum" between "a pretrial detainee" and a "post-conviction-prisoner[]." *Horace v. Gibbs*, 802 F. App'x 11, 13-14 (2d Cir. 2020). In the absence of a decision from our court, district courts have adopted two different approaches to cases involving incarcerated parolees.

Under the "Alleged-Adjudicated Approach," a district court will consider whether the incarcerated parolee had been adjudicated as a parole violator or was merely alleged to have violated the conditions of parole. *See, e.g.*, *Smith v. Fricke*, No. 17-CV-244, 2019 WL 4602973, at *12 (N.D.N.Y. Aug. 7, 2019) (focusing on "whether Plaintiff had been given a parole revocation hearing or whether a disposition had been reached regarding the host of parole violations"), *report & recommendation adopted in part and remanded on other grounds sub nom. Smith v. Russo*, No. 17-CV-244, 2019 WL 4602140 (N.D.N.Y. Sept. 23, 2019); *Hill v. County of Montgomery*, No. 14-CV-933, 2018 WL 2417839, at *2 (N.D.N.Y. May 29, 2018) ("[E]ven if Hill's probation had not expired prior to the alleged violation, *because he had not yet had a hearing or been found guilty of the violation, his status is more*

3

*akin to that of a pretrial detainee.*") (emphasis added). If the parolee has merely been accused of a violation, his status is akin to a pretrial detainee and the Fourteenth Amendment standard applies to his claims. If the parolee has been formally adjudicated as a violator, the Eighth Amendment standard applies.

Under the "Original Conviction Approach," if a parolee has been reincarcerated for either an alleged *or* a proven violation of parole, he will be treated as a convicted prisoner because his original conviction is the reason for his incarceration. *See, e.g.*, *Martin v. Vt. Dep't of Corr.*, No. 03-CV-240, 2005 WL 1278119, at *7 n.3 (D. Vt. May 25, 2005) ("Because [the defendant] was a parole violator, and not merely a pre-trial detainee during the period in question, his conditions of confinement claims must be analyzed under the Eight[h] Amendment."), *report and recommendation adopted sub nom. Martin v. Gold*, No. 03-CV-240, 2005 WL 2001749 (D. Vt. Aug. 19, 2005); *Towsley v. Frank*, No. 09-CV-23, 2010 WL 5394837, at *6 (D. Vt. Dec. 28, 2010) ("[W]hen a parolee is returned to prison because of a parole violation, the detention is justified *both* by his or her prior conviction and existing prison sentence, *and* his or her subsequent parole violation."). That means an excessive force claim brought against prison officials would be analyzed under the Eighth Amendment.

In this case, the district court followed the Alleged-Adjudicated Approach. It explained that "where the plaintiff is 'detained for allegedly violating the terms of a sentence imposed in an unspecified federal prosecution' the Fourteenth Amendment applies because such plaintiffs 'resemble more closely a pretrial detainee than a convicted prisoner.'" *Farrington*, 2024 WL 4135791, at *6 (alteration omitted) (quoting *Brooks v. Westchester Cnty. Jail*, No. 19-CV-10901, 2021 WL 3292229, at *5 (S.D.N.Y. Aug. 2, 2021)). As a result, when the district court conducted its qualified immunity analysis, it evaluated

4

the officers' conduct with respect to a violation of Farrington's rights under the Fourteenth Amendment and considered whether the officers' conduct violated clearly established law under those precedents evaluating excessive force claims under the Fourteenth Amendment. *See id.* at *11-12.

**B**

The district court applied the wrong constitutional standard. Whether accused or adjudicated, a parole violator is incarcerated because of the prior conviction and sentence he received after a criminal trial or guilty plea. As a result, the Eighth Amendment governs the officers' conduct with respect to the detainee. "The Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes' and consequently the Clause applies … '*after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.*'" *Whitley*, 475 U.S. at 318 (emphasis added) (citation omitted) (quoting *Ingraham v. Wright*, 430 U.S. 651, 664, 671 n.40 (1977)). Reincarcerated parolees do not resemble pretrial detainees who have yet to be punished by the state and are detained pending a determination of guilt or innocence.

The only court of appeals to have squarely addressed this issue appears to be the Ninth Circuit in *Flores v. Mesenbourg*, No. 95-17241, 1997 WL 303277 (9th Cir. 1997).[2] In that case, the detainee "was

---

[2] Other appellate courts have endorsed similar reasoning without squarely reaching the issue. The Fifth Circuit has recognized that "the detention and subsequent reincarceration of a parolee are only *triggered* by the new arrest; detention and reincarceration are *justified* by the prior conviction." *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996). But that case concerned "a parolee arrested for a subsequent crime," who "has a due process right to be free from punishment for the subsequent crime until convicted of the subsequent crime." *Id.* The Fifth Circuit has also explained that an inmate

5

confined as a result of [a] parole violation and was awaiting a parole revocation hearing during at least part of his confinement." *Flores*, 1997 WL 303277, at *1. He argued that the Fourteenth Amendment applied to his claims because his status was akin to that of "a pretrial detainee." *Id.* But the Ninth Circuit had "little difficulty concluding that the Eighth Amendment provides the proper standard." *Id.* The detainee "was subject to incarceration for [a] parole violation because he had originally been convicted and given [a] sentence which was moderated by parole. His original conviction is the authority under which he was confined after his parole violation. As a convicted prisoner, he must rely on the Eighth Amendment." *Id.*

When a parolee is detained for a suspected parole violation, "the detention is justified *both* by his or her prior conviction and existing prison sentence, *and* his or her subsequent parole violation."

---

who "had not yet been convicted of the crime with which he was charged" would have a claim "alleging a Fourteenth Amendment due process violation, in light of his status as a pretrial detainee." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993). But because "at the time of his arrest" the inmate "was on parole from the Texas Department of Corrections, where he was serving his sentence for an earlier burglary conviction," his status "would seem to warrant review under the Eighth Amendment's prohibition against cruel and unusual punishment." *Id.* The Fifth Circuit thought the Eighth Amendment applied to "a detainee's claim stemming from force applied when a jailer attempted to restore institutional order," but it said that "[e]ven if our review hinged upon [the inmate's] parolee status, the same standards would govern our analysis." *Id.* The Seventh Circuit has similarly recognized that "the parolee's reincarceration is only triggered by the new arrest; its justification relates to the prior conviction," but it did so when considering a challenge to the parole revocation procedures. *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988).

6

*Towsley*, 2010 WL 5394837, at *6. [3] That makes sense given the character of parole. In New York, "a parolee is deemed to be in legal custody of the Division of Parole until expiration of the maximum term or period of sentence." *United States v. Pascual*, 199 F. Supp. 3d 670, 675 (N.D.N.Y. 2016) (quoting *Oriole v. Saunders*, 884 N.Y.S.2d 719, 720 (1st Dep't 2009)). For that reason, "a convicted person released from incarceration on parole continues to serve his or her sentence while on parole and earns credit toward the maximum expiration date of the sentence unless and until the Division of Parole declares that person to be delinquent and revokes parole." *Id.* (alteration omitted) (quoting *Oriole*, 884 N.Y.S.2d at 720); *see also* N.Y. Penal Law § 70.40(1)(a) ("Release on parole shall be in the discretion of the state board of parole, and such person shall continue service of his or her sentence or sentences while on parole, in accordance with and subject to the provisions of the executive law and the correction law."); *United States v. Polito*, 583 F.2d 48, 54 (2d Cir. 1978) ("Parole is not freedom. A parolee is a convicted criminal who has been sentenced to a term of imprisonment and who has been allowed to serve a portion of that term outside prison walls.").

New York is not unique. "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence."

---

[3] *Cf. Hamilton*, 74 F.3d at 106 ("Unlike the typical pretrial detainee, the justification for the detention of a detained parolee is dual. As noted by the Seventh Circuit, the detention and subsequent reincarceration of a parolee are only *triggered* by the new arrest; detention and reincarceration are justified by the prior conviction.") (citing *Faheem-El*, 841 F.2d at 717). Different considerations might apply when the parolee is detained for committing a new criminal offense rather than for a parole violation. *See Towsley*, 2010 WL 5394837, at *6-7 (making this distinction).

7

*Morrissey v. Brewer*, 408 U.S. 471, 477 (1972). "Although no longer physically in prison, the parolee is constructively still a prisoner." *Baker v. Welch*, No. 03-CV-226, 2003 WL 22901051, at *11 (S.D.N.Y. Dec. 10, 2003). When a parolee is detained for a parole violation, he is not incarcerated for a new crime; the incarceration is justified by the sentence he is currently serving. An accused parole violator—while he is incarcerated pending the resolution of his violation proceedings—is serving the time on his original sentence.[4]

Accordingly, an accused parole violator does not resemble a pretrial detainee. The pretrial detainee has not been found guilty of any crime and is incarcerated pending a determination of guilt. Generally, he may be incarcerated only if he represents a flight risk or a danger to the community. *See United States v. Salerno*, 481 U.S. 739, 754-55 (1987). He is not serving a sentence and has yet to receive a punishment. The accused parole violator—even if he is awaiting an adjudication of whether he violated his parole—is incarcerated on a different basis.

It is true that an *adjudicated* parole violator has received all the process he is due *both* as to his sentence *and* as to his violation of the conditions of his parole. But that distinction does not affect the

---

[4] *Cf. United States v. Sommerville*, No. 22-981, 2024 WL 1266227, at *2 (2d Cir. Mar. 26, 2024) ("[W]hen a state term of imprisonment is imposed for conduct that led to revocation of a defendant's parole, the state term 'results' not from the conduct that constituted the parole violation but from the *original offense* for which the defendant was earlier sentenced and then released on parole. 'The underlying state crime was the only criminal "offense" that, by operation of law, "resulted" in the additional period of imprisonment imposed for the defendant's violation of parole.'") (citation and alterations omitted) (quoting *United States v. Garcia-Hernandez*, 237 F.3d 105, 107-08 (2d Cir. 2000)).

applicable constitutional standard. "The Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes' and consequently the Clause applies … '*after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.*'" *Whitley*, 475 U.S. at 318 (emphasis added) (citation omitted) (quoting *Ingraham*, 430 U.S. at 664, 671 n.40).

The Eighth Amendment does not depend on whether the state has afforded process with respect to the revocation of parole; it applies once the state has afforded the process associated with the criminal prosecution that led to the imposition of parole in the first place. After the conviction, everything that follows is a matter of punishment, and the question is whether that punishment is cruel and unusual. The Supreme Court has made clear that the "revocation of parole is not part of a criminal prosecution." *Morrissey*, 408 U.S. at 480. By the time an alleged parole violator is reincarcerated, he has received all the process to which criminal defendants are entitled. The question is whether the state imposed a cruel and unusual punishment afterward.

The Eighth Amendment applies to the excessive force claim of an alleged parole violator. The alleged violator "was subject to incarceration for [a] parole violation because he had originally been convicted and given the sentence which was moderated by parole. His original conviction is the authority under which he was confined after his parole violation. As a convicted prisoner, he must rely on the Eighth Amendment." *Flores*, 1997 WL 303277, at *1. The district court erred when it decided, based on the possibility that Farrington's parole violation had not been adjudicated, that the Fourteenth Amendment applied.

9

## II

As just explained, I would conclude that the Eighth Amendment standard applies to the excessive force claim of an incarcerated parole violator even if the violations have not yet been fully adjudicated. But regardless of whether that is ultimately the right answer, the relevant constitutional standard would not have been clear to a reasonable official at the time of the incident in this case. Given that it has not been clearly established whether the Fourteenth Amendment or the Eighth Amendment applies to the treatment of an incarcerated alleged parole violator, the only clearly established law is that *at least* the Eighth Amendment applies. The district court therefore should have assessed the defendants' conduct under that standard.

At the second step of the qualified immunity analysis, a court must ask "whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (alteration omitted) (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010)). "In determining whether a right is clearly established at the time of the conduct in question, we can consider Supreme Court decisions and our own decisions, as well as 'a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

At the time of the conduct in this case—and indeed today—it would not have been clear to a "reasonable officer" that the Fourteenth Amendment applied to the treatment of a detainee alleged to have violated parole. The district court even recognized that the Second Circuit has never decided whether the Fourteenth or Eighth

10

Amendment standard applies to the claims of reincarcerated parolees. *See Farrington*, 2024 WL 4135791, at *6. The Supreme Court has not addressed the question. The only court of appeals to have squarely addressed it is the Ninth Circuit in an unpublished and uncitable opinion—and that court reached the opposite conclusion. *See Flores*, 1997 WL 303277, at *1; *see also* 9th Cir. R. 36-3(c). The district courts in this circuit—far from reflecting a consensus position—have adopted divergent approaches.

The applicable constitutional standard was not clearly established. "Our silence and that of the Supreme Court on the continued viability of [a particular constitutional claim], together with the recited decisions of our sister circuits, demonstrate that any federal right … was not clearly established at the time of [the officers'] alleged actions." *Rodriguez v. Phillips*, 66 F.3d 470, 477 (2d Cir. 1995); *see also Kedra v. Schroeter*, 876 F.3d 424, 440 (3d Cir. 2017) (explaining that "we assess qualified immunity based on the law that was 'clearly established at the time an action occurred'" and noting that "it was not yet clearly established whether deliberate indifference in the substantive due process context was governed by an objective or subjective standard") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Perry v. Durborow*, 892 F.3d 1116, 1122 n.1 (10th Cir. 2018) ("[E]ven assuming Perry only had to demonstrate that Durborow acted with objective deliberate indifference, this lower standard wasn't clearly established as of February 25, 2013."); *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1028 & n.1 (10th Cir. 2020).

In an excessive force case decided after *Kingsley*—the case which held that a pretrial detainee must show only that the force used against them was objectively unreasonable—the Eighth Circuit concluded that "any constitutional rights afforded" to the plaintiff "under *Kingsley* were not 'clearly established' at the time of [his]

detention. Therefore, *Kingsley* does not [a]ffect the standard against which we evaluate the [defendant's] conduct in the qualified immunity analysis." *Hall v. Ramsey Cnty.*, 801 F.3d 912, 917 n.3 (8th Cir. 2015) (citation omitted).

Similarly, in this case, a reasonable officer would have been expected to know only that his conduct needed to conform to the Eighth Amendment standard. It was an open question—and therefore not clearly established—whether the more restrictive Fourteenth Amendment standard applies. The clearly established law at the time was only that *at least* the Eighth Amendment standard applies.

It was erroneous for the district court to evaluate the officers' entitlement to qualified immunity by reference to the clearly established law of the Fourteenth Amendment. Even if the district court were correct that the Fourteenth Amendment ultimately applies—which, in my view, it was not—the district court failed to recognize that the applicability of the Fourteenth Amendment to the officers' conduct was itself not clearly established. For that reason, the precedents applying the Fourteenth Amendment standard in other contexts do not represent clearly established law that a reasonable officer would have known applied to his treatment of an incarcerated parole violator in 2020. The district court should have evaluated the conduct under the Eighth Amendment standard because only that standard could be said to apply to the defendants' conduct under clearly established law at that time.

\*　　\*　　\*

I agree with the majority that the Eighth Amendment standard applies to the excessive force claim of an adjudicated parole violator. But that is not because the adjudication has constitutional significance

under an Alleged-Adjudicated Approach. I would follow the Original Conviction Approach according to which the Eighth Amendment applies to any parolee incarcerated for a violation of parole. Whether alleged or adjudicated, the parolee has been detained because of his prior conviction and therefore is a convicted prisoner rather than a pretrial detainee. While the majority concludes that the clarified record establishes that the Eighth Amendment standard applies to Farrington's claim under either approach, I would conclude that vacatur and remand would be appropriate on the record facing the district court.

Moreover, until it becomes clearly established whether the Fourteenth Amendment or the Eighth Amendment applies to the excessive force claim of an incarcerated parolee, the only clearly established law is that *at least* the Eighth Amendment applies. So the qualified immunity analysis must be based on that standard. I concur in the judgment vacating the order of the district court and remanding for further proceedings.